ELMER CLAWSON, PLAINTIFF IN ERROR, v. THE STATE, DEFENDANT IN ERROR.

1. The finding of the trial court upon questions of fact involved in the trial of a challenge to jurors is not reviewable.
2. In this case two jurors were summoned, by the name of John R. Mundy. Both appeared and answered to their names. The correct name of one was John R. Mundy; that of the other, John F. Mundy. The court properly overruled the challenge to the array for this error in the name.
3. Under the eighty-ninth section of the Criminal Procedure act, no judgment given upon an indictment shall be reversed for any error except such as shall or may have prejudiced the prisoner in maintaining his defence upon the merits. The prisoner was not prejudiced in this case.
4. An expert witness on the question of sanity testified on behalf of the state that the prisoner was sane. He further said he would not be willing to express that opinion if the birthmark on the prisoner was the result of syphilitic taint. The court charged the jury that the burden of proving insanity by a preponderance of evidence was upon the prisoner, and that the jury might take the statement of this expert witness as to the birthmark, in connection with the fact that the prisoner had produced no evidence of such syphilitic taint, and that the burden of proving such taint was upon him. There was no error in this instruction. It was, in substance, a charge that the burden of proving the taint was upon the prisoner before he could claim the benefit of it as an absolute fact. The court did not charge that the possibility of such taint could not be considered by the jury.

On error.

For the plaintiff in error, *Steele & Meehan.*

For the state, *Nelson Y. Dungan,* prosecutor of the pleas.

The opinion of the court was delivered by

VAN SYCKEL, J. In October, 1896, the plaintiff in error was convicted of murder of the first degree in the Court of Oyer and Terminer of Somerset county.

Three reasons are assigned and relied upon for the reversal of the judgment in this case:

*First.* Because the trial Court of Oyer and Terminer was not properly constituted, in that the lay judges thereof had been deposed by an act of the legislature approved March 26th, 1896, and did not sit as judges by reason of this act, and this act it is insisted is unconstitutional and void.

*Second.* That the general panel of jurors was illegal because either the number ordered to be drawn by the court, in pursuance of statutory requirement, was not drawn and summoned, the number actually drawn was one less than the number ordered by the court, the name of one person being drawn twice, and the actual number ordered by the court being supplied by summoning, without warrant of law, a person to serve as a juror whose name had not been placed in the jury box, or drawn therefrom in the presence of the court, or that two different persons of the same name were so drawn, and but one of them regularly summoned, and the required number ordered was filled by a constable, without authority, summoning a person of different name to serve on said panel.

*Third.* Because the court charged that the burden of proof was upon the defendant to show syphilitic taint in a birthmark, when that point as stigmata of insanity had been suggested and raised by the state alone.

The first reason cannot prevail, even conceding the act of 1896 to be unconstitutional.

The presiding or law judge of the Court of Common Pleas of the county sat with the Supreme Court justice during the trial of the case. No objection to the court so constituted

could have been successfully taken if the act of 1896 had not been passed.

The trial court was legally constituted, and there was no error in this respect.

The second reason turns upon a question of fact.

The court, after hearing the evidence, disposed of the challenge as follows:

The Court—It is clear to the court that this challenge cannot be sustained and must be overruled.

From the evidence produced in behalf of the challenge it clearly appears by inference that there were two John Mundys living in Warren township, both following the same occupation, both eligible to jury duty; one of them in fact was John R., the other in fact was John F., but owing to the fact that both followed the same avocation, sometimes the name of one was mistaken as being the name of the other. Now, we may assume from this fact that the sheriff intended both these John Mundys to be served; the act of his deputy inferentially shows that. He served both John Mundys; both attended and no substantial right of the prisoner has been in the least invaded, because the whole fifty men liable to jury duty and entitled to serve on the juries, are here, have been here, and are here to-day so far as the court knows. Certainly, these particular persons, both of them, appear to be here. So that the court can see no reason for quashing the array.

Mr. Meehan—The sheriff testified that he took his jury from that book, and that book which is in evidence shows the names of both John F. and John R.

The Court—I do not know that——

Mr. Meehan—I think the stenographer's notes will show.

The Court—The court said there were two John Mundys; one in fact was John F., the other John R.; both are on the panel, both are here, and a mere clerical error in calling both John R., when one was in fact John F., has not to the least degree affected the substantial rights of any prisoner who will be tried before this jury so far.

The challenge will be overruled.

The finding of the court upon questions of fact involved in a challenge is not reviewable. *Patterson* v. *State*, 19 *Vroom* 381 ; *Johnson* v. *State, ante p.* 271.

There is evidence upon which the conclusions of the trial court may be based, and it does not appear how the substantial rights of the prisoner were affected or impaired by this alleged error.

*Roberts* v. *State*, 68 *Ala.* 515, cited in support of the plaintiff's case, is not in point. There one juror less than the number ordered by the court was drawn and summoned. Here the court ordered fifty jurors to be drawn and fifty were drawn and summoned. Both were residents of the township of Warren and both were summoned. Although John F. Mundy was served with process under the name John R. Mundy, he appeared in court and answered to the call of his name.

If the omission of the middle letter of a name or a mistake in the middle letter under the circumstances here presented, is ground to sustain a challenge to the array, it will render the administration of justice exceedingly difficult. The eighty-ninth section of the Criminal Procedure act (*Gen. Stat., p.* 1138), providing that no judgment given upon an indictment shall be reversed for any error except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits, was passed to prevent the successful interposition of objections which have no real merit.

The charge of the trial court with respect to the third assignment of error was as follows :

"Your attention has been called to the fact that Doctor Ward declared that he was not willing to express the opinion that he did if the birthmark on the defendant was the result of syphilitic taint. But you may take that statement in connection with the fact that the defendant, who has been examined by experts, produces no evidence of such syphilitic taint, and, as before explained, the burden of proof is on him."

The court had previously instructed the jury that the burden of proving insanity is upon the defendant; that he

must sustain that proof by a preponderance of evidence, and that, unless the defence is thus sustained it cannot be successful.

It was, therefore, entirely correct for the court, in submitting the evidence of Dr. Ward to the jury, to tell them that they must take his evidence in connection with the fact that the defendant had produced no evidence of syphilitic taint, and that the burden of proving such taint was upon the defendant. Dr. Ward was a witness against the prisoner on the question of insanity, and he said that he would not be willing to express the opinion he did if the birthmark on the defendant was the result of syphilitic taint. What the court, in substance, said to the jury in reference to this qualification which Dr. Ward engrafted upon his opinion as an expert was that the jury must not give that qualification the importance it would have if the taint was admitted or proven, and that the burden was upon the defendant to prove it before he could claim the benefit of its existence as an absolute fact. The jury was not instructed that the possibility of the existence of the taint could not be regarded.

No error being found in the proceedings under review, the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON, GUMMERE, LIPPINCOTT, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, KRUEGER, NIXON.    12.

*For reversal*—None.